## Commonwealth *v.* Brown.

516

Argued November 29, 1932. Before FRAZER, C. J., SIMPSON, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Raymond Pace Alexander,* with him *Robert N. C. Nix,* for appellant.—When the trial judge told the jury in effect that he had never known of a defendant treated in the manner described, his statement was testimony, and improper: Com. v. Schoenleber, 96 Pa. Superior Ct. 76.

The trial judge's reference to counsel's address as a "harangue" ridicules defendant's whole defense, and was improper: Com. v. Tompkins, 265 Pa. 97.

In telling the jury to disregard legitimate arguments, the trial judge denied defendant his constitutional right to be heard by himself and his counsel: Cathcart v. Com., 37 Pa. 108; Com. v. Polichinus, 229 Pa. 311.

Since the jury had the duty to determine what penalty, if any, should be imposed on defendant, it had the right to consider defendant's environment and the circumstances under which he had been reared: Com. v. Dague, 302 Pa. 13; Com. v. Williams, 307 Pa. 134.

*Clare Gerald Fenerty,* Assistant District Attorney, with him *Charles F. Kelley,* District Attorney, for appellee.—The appellate court will not consider an excerpt from a charge as ground for reversal where a consideration of the entire charge shows that the prisoner was not harmed by the excerpt: Com. v. Jones, 297 Pa. 327; Com. v. Welch, 291 Pa. 40.

A judge may express his opinion to the jury so long as he leaves them free to act: Com. v. Lessner, 274 Pa. 108, 114; Com. v. Webb, 252 Pa. 187.

The jury are to be guided by counsel's arguments only in so far as they are supported by the evidence and appeal to their reason and judgment: Com. v. Polichinus, 229 Pa. 311; Com. v. Nelson, 294 Pa. 544, 548.

OPINION BY MR. JUSTICE MAXEY, January 9, 1933:

On February 3, 1932, Dorothy Lutz, eight years of age, was reported missing from her home in the City of Philadelphia. Five days later her dead body was found on the second floor of an empty house at 1021 North American Street in that city. On February 12th, appellant, William Brown, a mulatto, then sixteen years and nine months of age, was taken into custody by city detectives and questioned. A ring found near the child's dead body was identified by two colored girls as having been in the possession of the defendant. The defendant when on the witness stand admitted that he had previously found this ring. The coroner's physician testified that the hair

found on the child was of the same type of hair as defendant's. Defendant confessed that he attacked and murdered the child. He was indicted and tried on the charge of murder. At the trial the chief issue was whether the defendant's confession was made voluntarily or under such duress as to destroy its value as evidence.

Defendant claimed that he was taken into custody about noon on February 12th, placed in a small, hot room at the police station and accused by the officers of the murder of the child, that he was struck by them over the eye with a blackjack, that he was struck altogether about fifteen or twenty times, that the officers continually cursed him and threatened to throw him "out to that mob," that he was subjected to physical violence until he was taken to his cell about three o'clock the next morning, that he was denied food and water until 12:30 p. m., February 13th (his last meal having been at 7 p. m., February 11th), and otherwise ill-treated. He testified that he finally said to the officers after they had drawn a gun on him and cocked the trigger back and threatened to blow his "damned brains" out: "You give me something to eat. Give me some water. Don't beat me any more and I will say I did it. I will say I did it." He said further: "I couldn't tell them nothing. I just said I killed her. I killed her. And he said, 'Now tell me how you done it.' I couldn't tell him so he told me." Defendant claimed that the officers supplied the details of the confession. The allegations of abuse and of deprivations of food and of physical injuries were denied not only by the police officers and detectives, but also by a physician who said that the defendant was under his observation at the police station every day during the time in question and that he bore no evidence of any physical violence having been done him, and that the latter made no complaint. A restaurant keeper testified that he furnished meals to the defendant.

The jury found the defendant guilty of murder in the first degree and fixed the penalty of death. Defendant thereafter made a motion for a new trial. This motion was overruled and the defendant was sentenced to death. An appeal was then taken to this court.

Appellant claims that his trial was unfair. This claim is based on certain excerpts from the charge of the court. One of these excerpts (3d assignment) reads as follows: "You have listened to the harangue. You have listened to the statement made in the effort to play upon your sympathy that if you find this defendant guilty it will be too late to do anything else; that you cannot bring him back.

"Gentlemen of the jury, you took an oath. You turn as deaf an ear to any harangue of that kind as you do to anything said about evidence that has not been offered in this case."

Webster's New International Dictionary defines "harangue" as "a noisy, bombastic, ranting speech." It was as improper for the trial judge to characterize in effect the utterances of counsel as "noisy, bombastic, and ranting" as it would have been to characterize similarily a witness's testimony. It is a constitutional right of the defendant "to be heard by himself and his counsel." (Section 9, article I of the Constitution.) "Perhaps the privilege most important to the person accused of crime, connected with his trial, is that to be defended by counsel:" Cooley's Constitutional Limitations, 8th edition, volume 1, page 696. "In guaranteeing to parties accused of crime the right to the aid of counsel, the Constitution secures it with all its accustomed incidents:" Ibid. 700. The weight to be given an address or given the testimony of witnesses is to be determined by the jury and not by the trial judge. For the latter to discredit the arguments of counsel by a contemptuous characterization of them is as much an invasion of the jury's province and as prejudicial to the defendant as would be a like characterization of the testimony of an impor-

tant witness. Arguments of counsel are an integral part of a jury trial. They are not mere trial trappings which a judge is at liberty to dispense with or to instruct a jury to disregard. Juries do not decide issues on naked facts alone that are presented to them; they decide issues both on these facts and on inferences reasonably drawn therefrom. It is the right of opposing counsel to urge jurors to accept as reasonable the inferences which they respectively press upon them, and it is the duty of jurors to consider carefully whether they will accept or reject such inferences.*

In those rare instances when trial judges have referred to the arguments of counsel contemptuously, appellate courts have considered it reversible error. In the case of McDuff v. Detroit Evening Journal Co., 84 Michigan 1, 47 N. W. 671, 22 A. S. R. 673, the Supreme Court of Michigan in an opinion by Mr. Justice GRANT said: "Whatever language may be used by counsel in the heat of trial, it is the legal duty of the judge to preside, and decide with impartiality, and to keep counsel within proper bounds. Appellate courts must presume that one occupying so important a position as that of circuit judge can influence a jury. It is their duty to follow his instructions as to the law. Whenever he expresses an opinion on any disputed fact, or of the character of a witness, or compliments one attorney at the expense of

---

* "The first and most essential element in a jury trial is a wise, learned, impartial and competent judge. ...... And then there are the twelve honest and intelligent jurors drawn from the body of the community, sworn to pass upon the issue, and to return whence they came when their task is done. ...... And then you must have the earnest and loyal advocates, sworn to do their whole duty; which means to employ all their powers and attainments, and to use their utmost skill and eloquence, in exhibiting the merits each of his own side of the case. In doing so the advocate only does his duty, and if the adversary does his, the administration of justice is secured:" excerpt from address on "Trial by Jury" made by Joseph H. Choate before the American Bar Association on August 18, 1898.

the other, or uses language which tends to bring an attorney in contempt before the jury, or uses any language which tends to prejudice them, he commits an error of law for which the verdict and judgment must be promptly set aside. Appellate courts cannot correct mistakes of fact. Trial courts, therefore, cannot be too circumspect and careful to see that questions of fact are submitted to the unbiased judgment of the jury, which, under our jurisprudence, are for their sole determination. To sanction such conduct and language as the above [referring to the trial judge's remarks] would tend to render trials a farce, and result in a denial of justice." The third assignment of error is sustained.

Another excerpt from the charge which is assigned for error (1st assignment) is as follows: "Police methods are sometimes not approved, but brutality is never condoned. I have never sat here and seen a defendant in such a terrible condition by his bandages and his face and the physical state of his body that I have ordered an investigation. I say now, as I did before, that I have sat in this court room as frequently, if not much more so than the other fourteen judges of this community. I cannot testify, but I cannot let statements of that kind go unchallenged, because they are not the truth." These remarks of the trial judge were apparently made in answer to something the defendant's counsel said to the jury. If defendant's counsel in his address transcended the limits of legitimate advocacy by giving testimony, he should have been promptly brought back within bounds. Instead of doing this the trial judge took it upon himself to offer rebuttal testimony. It is no part of a judge's function (any more than it is a function of counsel) to offer testimony unless he assumes the role of a witness, takes the stand and submits himself to cross-examination. Of course, if a judge appears as a witness, he should not also try the case. The judge in his charge and counsel in their arguments have the right to use illustrations from history or literature or any other

stock of common knowledge, but they are not privileged to testify unless they assume formally a witness's role. In Com. v. Tompkins, 265 Pa. 97, 108 A. 350, this court reversed the judgment of the court below because the trial judge belittled the plea of insanity made by the prisoner, by stating that the prisoner was "of a class vulgarly called cranks" and that "those beings, who live with these unsettled minds, who are not taken care of by friends, relatives, or the State, when caught in the act of crime, must be punished." The first assignment of error is sustained.

There are other errors which were duly excepted to but not assigned for error specifically as required by Rule 22 of this court. But in Rule 37 this court "reserves to itself the right to notice a plain error duly excepted to, though not assigned, or improperly assigned, whenever it deems the justice of the case requires it." As the case is to be tried again these errors should be pointed out. They are, quoting from the charge, as follows, A, B, C, D and E:

(A) "Do not have your reason swayed and your prejudices aroused by the tales of the terrible treatment by the police. Who are those policemen that they talk about, the blood thirsty, brutal officers, who resorted to inhuman brutality, starvation, and every other thing that was described, in order that they might solve mysteries, ferret out crime, suppress crime, and enforce the law. They are your representatives, and if they are what counsel for the defense would have you believe, they are not fit to be your representatives, and there is not one of them who should not only be dismissed, but prosecuted, for doing the things under the law that he has no right to do." These remarks did not indicate judicial equanimity. They were controversial in tone and phrasing and their import was to ridicule defendant's evidence and arguments as to the alleged police brutality. On whatever proof of the latter it could offer, the defense relied to exclude the confession, and the issue of duress

with the conflicting evidence thereon the court should have submitted to the jury dispassionately. The officers who testified were witnesses not "representatives."

(B) "And bear in mind now and throughout your deliberations that there is an important difference between argument of counsel and the testimony. The record that you are dependent upon for your conclusion is the testimony that you heard from the witness stand; not the arguments of counsel. You may adopt the conclusion of counsel, and if you do they are your conclusions."

Several pages further on, the trial judge said: "But look upon his innocence or guilt according to the testimony you have heard from the witness stand, and absolutely nothing else." Later he said: "When you leave this court room the only thing you take with you is your recollection of the testimony and the exhibits."

These instructions plainly imported a direction to the jury to accord the arguments of counsel minimal consideration.

In the case of Com. v. Polichinus, 229 Pa. 311, 78 A. 382, this court in an opinion by Mr. Justice MOSCHZISKER said: "The constitutional right to be heard by counsel carries with it the right to have arguments of counsel considered by the jury in passing upon the evidence. ...... A trial judge may properly instruct the jury that the arguments of counsel are not binding upon them, and that they are only to be guided by such arguments in so far as they are supported by the evidence and appeal to their reason and judgment; but, when the learned judge in the present case told the jury, without any saving words, that they were not to consider the evidence in the light of the arguments of counsel, he committed clear reversible error."

A lawyer is an officer of the court. It is his right and duty to discuss the evidence in a light most favorable to his client, and it is the jury's duty to consider both the evidence and also the inferences from that evidence which opposing counsel have brought to their attention.

(C) "I can explain from now to Kingdom Come and you will understand just as well as you do today, that the absence of nicety must not be frowned upon, in the methods that are sometimes employed by police in the suppression of crime and the ferreting out of mysteries." A few pages later appears this language: "And in the procuring of confessions sometimes nicety of details must be governed by the necessity of the circumstances. Circumstances create conditions that justify methods that are employed, and, if they did not, even the lips of policemen would be sealed."

The plain import of this instruction was that even if there had been brutality employed in the procuring of a confession, circumstances might have justified it. This is error. No principle of the law is better settled than that confessions secured by brutality or by any other form of duress are worthless. "A confession induced by threats is inadmissible:" Com. v. Harman, 4 Pa. 269. "A confession obtained by torture, personal violence, or abuse is inadmissible in evidence because involuntary:" 1 R. C. L. 559, section 106. "When there is conflicting evidence as to whether it was a voluntary confession the question of voluntariness should be left to the determination of the jury, like every other question of fact, under instructions to disregard wholly the evidence of the confession unless they are convinced and find, upon all evidence adduced, that it was voluntary:" 1 R. C. L. 579, section 122. "A confession of guilt by accused is admissible against him when, and only when, it was freely and voluntarily made without having been induced by the expectation of any promised benefit nor by the fear of any threatened injury. ...... Whether a confession is voluntary depends largely upon the facts of the particular case. The sex, age, disposition, education, and previous training of the prisoner, his mental qualities, his physical health and his surroundings are matters to be considered:" 16 C. J. 717, section 1468.

It is true that the trial judge correctly charged the jury when he said: "When a threat or an indictment prompts a false confession or self accusation of guilt it should not be considered by the jury." However, this does not cure the error in the excerpts cited under (C).

(D) "The ring was not created by the detectives. Neither the brutality of Lieutenant Engle nor the profanity of Sergeant Sullivan created that ring. The ring was found under the body of Dorothy Lutz, and the ring was identified through the materiality of the testimony of the two girls taken into custody." The trial judge here was usurping the functions of the jury. It was for the jury to determine from the evidence whether the ring had been found under the body of the child and had been properly identified.

(E) "This is not a sociological discussion as to the congested sections of the city. I had my early education under the shadows of the same school that this defendant says he attended. I was born within a stone's throw of this very district and environment which produced this crime, and I think up to the present time perhaps I have escaped.

"This is no place to have a dissertation on punishment, and what is not or what is the proper punishment, except as it concerns this case. This is a court room where you are determining the guilt or innocence of a man accused of murder. And all outside interests and discussions have no part in your deliberation."

Passing by the autobiographical material in the first paragraph, we find error in the second paragraph. It *was* entirely proper for opposing counsel to discuss the question of punishment, for in the event of the conviction of the defendant of murder in the first degree, the law imposed upon the jury the further duty of determining whether the penalty should be death or life imprisonment. It was the right and duty of defendant's counsel in appealing for life imprisonment instead of the death penalty, in the event of conviction of the highest

crime charged, to discuss the defendant's age, his up-
bringing, his environment, and all other matters appear-
ing from the evidence which might assist the jury in
choosing the appropriate penalty. This court in Com.
v. Williams, 307 Pa. 134, 153, 160 A. 597, speaking
through Mr. Justice KEPHART said: "Mitigating circum-
stances do not constitute justification or an excuse for
the offense, but they are such matters as may be sub-
mitted in the form of testimony or may be derived by
inference from the general body of the evidence which in
fairness and mercy may be considered by the jury in fix-
.ing the degree of moral culpability by reducing the pun-
ishment inflicted. See Smith v. People, 75 Pac. 914, 32
Colo. 251."

In addition to reading—as the trial judge did—the act
of assembly placing upon the jury the responsibility of
fixing the punishment after agreeing upon a verdict of
murder in the first degree, the trial judge should also in
plain, unmistakable language have impressed upon the
jury the fact that it had this responsibility and that, in
meeting it, it must consider all of the facts and circum-
stances of the case, including the defendant's age and
all the other information brought out about him at the
trial. The law recognizes that some murderers of the
first degree are properly punishable by death and others
by life imprisonment. In determining the proper pun-
ishment in a case of murder of the first degree, a jury
must act not arbitrarily, but intelligently in the light of
both the evidence and the legitimate arguments of coun-
sel.

The crime committed was atrocious. A recital of its
details naturally inflames human emotions, but this fact
only made more imperative the duty of the judge to con-
duct the trial of the accused with dignity and impartial-
ity. The defendant was presumed to be innocent until
the accusation was proved. At all times he was entitled
to the protection of the law. On no official is conferred
the power to prejudge a cause. No matter how rampant

the spirit of lawlessness. or of vengeance may be, it is the duty of a judge to exclude that spirit from the court of justice over which he presides. In the recent case of Powell et al. v. Alabama (Nos. 98, 99 and 100, October Term, 1932), the Supreme Court of the United States, in an opinion delivered by Mr. Justice SUTHERLAND (on November 7, 1932) well said that a criminal trial should "proceed promptly in the calm spirit of regulated justice."

The American judiciary may take just pride in the fact that though there have been crimes in this country which have stirred not only localities but the entire nation, those accused of their commission have been tried, from the calling of the case until its final phase was committed to the jury's keeping, in a spirit of "genuine, tender and reverent solicitude for the dignity and majesty of the law." *

That is the spirit which should characterize the trial of this defendant and of every other person who has to answer an indictment before the bar of justice.

The judgment is reversed with a venire.

--------

* When President McKinley was assassinated in 1901 public feeling was deeply and justly stirred. Yet the trial of the assassin was so conducted that no one has ever intimated that either the judge or any of the opposing counsel departed for an instant from the high plane on which Judge TRUMAN C. WHITE early placed that case when he said to the jury: "We can pay no higher tribute to the man who is dead than to observe that exalted opinion and reverence for the law which he would ask if he were here." As the trial was about concluded he complimented the eminent opposing counsel on the fact that they had "made no attempt to unfairly secure a verdict one way or the other." At the close of his charge, he told the jurors that the spirit that had characterized that trial from its beginning should continue until the end, and that was the spirit of "a genuine, a tender and a reverent solicitude for the dignity and the majesty of the law."