Vetrulli, Appellant, *v.* Wallin Concrete Corporation et al.

74

Argued November 13, 1940.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*James J. Regan, Jr.,* for appellant.

*Robert C. Fable, Jr.,* with him *Raymond A. White, Jr.,* for appellees.

OPINION BY HIRT, J., February 28, 1941:

Claimant was injured by a fall in the course of his employment and an open agreement for compensation for total disability was entered into on September 3, 1933. In a later proceeding brought by defendant to terminate compensation, the referee on January 17, 1936 found claimant still totally disabled because of *post-traumatic epilepsy* resulting directly from the accident, and accordingly dismissed defendant's petition. On appeal the referee's findings and order were affirmed by the board. Claimant continued to receive payments of compensation for total disability until November 3, 1937 when he petitioned for a modification of the agreement alleging that his disability had become permanent as well as total. To this petition the defendant filed an

answer averring "that claimant's physical condition does not constitute either permanent total disability or in fact more than a state of temporary partial disability." The effect of both claimant's petition for modification and defendant's answer was to concede that the open agreement for total disability did not properly dispose of claimant's right to compensation.

Testimony on the issue of the extent of claimant's disability was taken before a referee who on October 27, 1938 denied the prayer of claimant's petition and refused to reinstate the former open agreement but instead, on a finding that claimant's disability was only 50%, made an appropriate award for partial disability. At the hearing before the referee the physician who attended claimant and Dr. Ross H. Thompson, a psychiatrist, both testified that in their opinion the disability was total and permanent. Dr. A. M. Ornsteen, a neurologist called by defendant, was of the opinion that claimant's disability though permanent was only about 50% partial. Because of this conflict in the medical testimony the board on appeal remanded the record to the same referee for further hearing and suggested "that he appoint an impartial expert after consultation with counsel, to examine the claimant and the record and express his opinion as to the extent of claimant's disability." The referee then appointed Dr. Joseph C. Yaskin and on his testimony and his conclusion that "claimant has a permanent partial disability" the referee again made an award on the basis of 50% disability. On successive appeals from this order both the board and the lower court affirmed.

Though the proceeding was brought by claimant and the defendant had not petitioned for a reduction in compensation on the basis of partial disability, we do not agree that on a finding adverse to claimant, the power of the compensation authorities was limited to dismissing claimant's petition, thus reinstating the open agreement for total disability. By §413 of the

compensation act as re-enacted and amended by the Act of June 4, 1937, P. L. 1552, 77 PS 771 "The board, or a referee designated by the board, may, at any time, review and modify or set aside an original or supplemental agreement, upon petition filed by either party with the board or in the course of the proceedings under any petition pending before such board or referee, if it be proved that such agreement in any material respect is incorrect." In the proceeding under claimant's petition, on the issue raised by it and the defendant's answer, the referee had the authority to review and modify the original agreement and to make an award in accordance with the finding that the agreement was incorrect in that claimant was only partially disabled. Since the amendment is procedural merely it is applicable to a proceeding pending before the referee though the petition which gave rise to the proceeding was filed before its effective date. *Kuca v. Lehigh Valley Coal Co.*, 268 Pa. 163, 110 A. 731.

The referee, following the order of the board suggesting the appointment of an impartial medical expert, consulted with claimant's counsel and inquired whether Dr. Yaskin would be acceptable to him and on the referee's assurance that this witness had never before testified for defendant or its insurance carrier, counsel agreed to the appointment. It is conceded, as it must be, that there is ample testimony in the record to warrant the reduction of compensation from total to 50% partial. Dr. Yaskin's high standing in his profession is not questioned and there is not a word of testimony indicating that he had any interest in the case other than in the medical and neurological questions involved. He was an impartial witness.

The complaint arises from the fact that after the award claimant's counsel, for the first time, learned that Dr. Yaskin had testified before the same referee in a former compensation case, not involving defendant or its insurance carrier, where the disability was traumatic

epilepsy and in that proceeding expressed the opinion that the disability of the claimant was but 50% partial. From this fact claimant charges that the referee had an improper interest in the outcome of the proceeding and therefore was disqualified.

A claimant, regardless of the evidence against him, has the right to an impartial referee to judge the facts. "The duty of a judge to conduct the trial with...... impartiality is imperative": *Com. v. Brown*, 309 Pa. 515, 164 A. 726. This principle applies to all cases whether criminal or civil and if a referee has an interest in the outcome, he is disqualified from sitting as a judge in the proceeding before him and his award will be set aside and the claim will be heard de novo by an impartial referee. There can be no doubt as to the right of an injured employee to have his claim adjudicated by disinterested and impartial tribunals.

But we have examined the record in vain for any evidence of bias or improper conduct on the part of the referee. Claimant's disability was a result of traumatic epilepsy. At the first hearing Dr. A. M. Ornsteen, a neurologist of recognized eminence in his specialty testified that claimant had no disability which would interfere with performing manual labor except that he could not "work steadily for eight hours, exerting himself to the utmost." He fixed disability at 50%. The board in the interest of claimant suggested that other medical testimony would be helpful. Dr. Yaskin's testimony agreed with that of Dr. Ornsteen and his conclusion was that there was no more than 50% disability. No extended discussion of claimant's contentions is necessary. There are degrees of disability from epilepsy, as indicated in the testimony of Dr. Yaskin in the case above referred to, (*Fegan v. Maccabees et al.*, 133 Pa. Superior Ct. 333, 2 A. 2d 511) depending upon the frequency and severity of the seizures. From the fact that he found 50% partial disability in the former case, it did not follow that he would come to the same

conclusion in every case involving traumatic epilepsy. There is no obligation on a referee to appoint as an expert one whose general views on the particular type of disability are unknown to the referee. His duty is performed by the selection of one who is impartial and competent. That duty was performed in this case.

Judgment affirmed.