## Commonwealth *v.* Ware, Appellant.

Argued November 10, 1971. Before JONES, EAGEN, O'BRIEN, ROBERTS, and BARBIERI, JJ.

*J. Charles Short,* for appellant.

*Arlen Specter,* District Attorney, with him *James T. Ranney* and *Milton M. Stein,* Assistant District Attorneys, *James D. Crawford,* Deputy District Attorney, and *Richard A. Sprague,* First Assistant District Attorney, for Commonwealth, appellee.

*H. Robert Fiebach,* for amicus curiae.

OPINION BY MR. JUSTICE ROBERTS, December 20, 1971:

The Commonwealth in this appeal calls upon this Court to hold the federal constitutional standards of *Miranda v. Arizona,* 384 U.S. 436, 86 S. Ct. 1602 (1966), inapplicable to a 1963 confession sought to be introduced in a post-*Miranda* trial. This contention must be rejected. It ignores the controlling and unambiguous pronouncements of the United States Supreme Court concerning the extent of *Miranda's* retroactivity. These pronouncements have been scrupulously followed not only by an unbroken line of decisions of this Court[1] but also by virtually every other court in the nation which has dealt with the issue.[2]

The procedural history of the present appeal is as follows: On October 3, 1963, appellant Paul Ware confessed to the commission of four murders. The statements were elicited from him in the course of custodial interrogation and were not preceded by the warnings of constitutional rights mandated by *Miranda.* A murder indictment was returned against appellant in December of 1963, but further prosecution was postponed as a result of his commitment to Farview State Hospital pursuant to a court order declaring him to be mentally incompetent to stand trial.

In July of 1967, appellant was found to have regained his competency, and his case was listed for trial. However, on May 23, 1968, the Philadelphia Court of

---

[1] See cases cited pages 55-56, infra.
[2] See cases cited footnote 5, infra.

Common Pleas ordered the 1963 confessions suppressed for the reason that they had been obtained in circumstances violative of *Miranda*. In light of the suppression order and the absence of other independent evidence of appellant's guilt, the Commonwealth petitioned for the entry of a nolle prosequi. Appellant offered no objection, and the court approved the nolle prosequi.

On August 11, 1969, more than one year after the original suppression order and nine months after the entry of the nolle prosequi, the Commonwealth changed its position and moved for removal of the nolle prosequi. The motion was granted over appellant's objection, and the Commonwealth then petitioned the court to vacate its prior suppression order and allow a rehearing of the matter. This request was likewise granted over objection, and a suppression hearing was held on June 25 and June 26, 1970. On November 13, 1970, the court of common pleas held that the confessions were admissible in evidence notwithstanding the conceded absence of *Miranda* warnings. This appeal followed.[3]

The Commonwealth argues in defense of the trial court's suppression order that the standards of *Miranda* should not apply to a confession obtained prior to the

---

[3] This interlocutory appeal was allowed pursuant to Section 501(b) of the Appellate Court Jurisdiction Act of July 31, 1970, P. L. 673, Art. V, 17 P.S. §211.501(b). Section 501(b) provides in pertinent part as follows: "When a court or administrative agency, in making an interlocutory order in a matter in which its final order would be within the jurisdiction of an appellate court, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the matter, it shall so state in such order. The appellate court may thereupon, in its discretion, permit an appeal to be taken from such order." The certification required by Section 501(b) was made by the court of common pleas on December 1, 1970, upon the joint petition of appellant and the Commonwealth.

date of that decision. We need not, however, respond to the Commonwealth's view as to what "should be": to put it quite simply, the matter is no longer an open question.

In *Johnson v. New Jersey*, 384 U.S. 719, 86 S. Ct. 1772 (1966), the United States Supreme Court was squarely confronted with the question whether and to what extent *Miranda* should be accorded retroactive application. After carefully analyzing the material considerations,[4] the Court concluded: "We hold further that Miranda applies only to cases in which the trial began after the date of our decision one week ago." Id. at 721, 86 S. Ct. at 1775.

We cannot imagine how the Supreme Court could possibly have spoken more definitely. That Court made it clear that the date of *trial* is the operative event, and that therefore the *Miranda* standards must be applied to all post-*Miranda* trials, including those cases such as the present one involving pre-*Miranda* confessions. This Court has not only faithfully honored the United States Supreme Court's clear directive, see *Commonwealth v. Davis*, 440 Pa. 123, 270 A. 2d 199 (1970); *Commonwealth v. Singleton*, 439 Pa. 185, 266 A. 2d 753 (1970); *Commonwealth v. Bennett*, 439 Pa. 34, 264 A. 2d 706 (1970); *Commonwealth v. Ware*, 438 Pa. 517, 265 A. 2d 790 (1970); *Commonwealth v. Yount*, 435 Pa. 276, 256 A. 2d 464 (1969), cert. denied, 397 U.S. 925, 90 S. Ct. 918 (1970); *Commonwealth v. Williams*, 432 Pa. 557, 248 A. 2d 301 (1968); *Commonwealth v. Bordner*, 432 Pa. 405, 247 A. 2d 612 (1968); *Commonwealth v. Leaming*, 432 Pa. 326, 247 A. 2d 590 (1968); *Commonwealth v. Robinson*, 428 Pa. 458, 239 A. 2d 308 (1968);

---

[4] "We must look to the purpose of our new standards governing police interrogation, the reliance which may have been placed upon prior decisions on the subject, and the effect on the administration of justice of a retroactive application of Escobedo and Miranda." 384 U.S. at 727, 86 S. Ct. at 1777.

*Commonwealth v. Sites,* 427 Pa. 486, 235 A. 2d 387 (1967),[5] but we adopt the *Johnson* position as a matter of state law.

The Commonwealth would have us abandon the foregoing state and federal case law on the ground that the trial date language in *Johnson* was merely "ill-considered" and "inadvertent" dicta. We are unpersuaded. In the first place, a state court is not free to ignore the dictates of the United States Supreme Court on federal constitutional matters because of its own conclusion that those dictates are "ill-considered". Even if this or any other court should disagree with the views of the United States Supreme Court on a particular constitutional issue, those views are binding. See, e.g., *Commonwealth v. Williams,* 432 Pa. 557, 568 n. *, 248 A. 2d 301, 307 n. 8 (1968).

In the second place, we do not believe that the Supreme Court was speaking "inadvertently" when it stated five separate times in *Johnson* that *Miranda* should apply to all post-*Miranda* trials.[6] Any possible doubts

---

[5] Nor, we might add, has our interpretation of *Johnson* been unique. See *Posey v. United States,* 416 F. 2d 545, 549 (5th Cir. 1969); *Sheer v. United States,* 414 F. 2d 122 (5th Cir. 1969); *Camacho v. United States,* 407 F. 2d 39 (9th Cir. 1969); *United States v. Fox,* 403 F. 2d 97 (2d Cir. 1968); *United States v. Vanterpool,* 394 F. 2d 697 (2d Cir. 1968); *Groshart v. United States,* 392 F. 2d 172 (9th Cir. 1968); *Evans v. United States,* 375 F. 2d 355 (8th Cir. 1967); *Rolland v. Michigan,* 320 F. Supp. 1195 (E.D. Mich. 1970); *Griffith v. Jones,* 283 F. Supp. 794 (N.D. Ga. 1967); *Commonwealth v. Bujnowski,* 267 N.E. 2d 924 (Mass. App. 1971); *Young v. State,* 234 So. 2d 341 (Fla. 1970); *State v. Anderson,* 229 So. 2d 329 (La. 1969); *State v. Butler,* 249 N.E. 2d 818 (Ohio 1969); *State v. Knott,* 249 A. 2d 421 (R.I. 1969); *Guyette v. State,* 438 P. 2d 244 (Nev. 1968); *People v. Peacock,* 287 N.Y.S. 2d 166 (N.Y. App. 1968); *State v. Wong,* 50 H. 42, 430 P. 2d 330 (1967); contra *State v. Lewis,* 274 N.C. 438, 164 S.E. 2d 177 (1968) (semble); *Clark v. Smith,* 224 Ga. 766, 164 S.E. 2d 790 (1968).

[6] "We hold further that Miranda applies only to cases in which the *trial* began after the date of our decision one week ago."

. . .

in this regard should have been forever put to rest by the Supreme Court's subsequent decision in *Jenkins v. Delaware*, 395 U.S. 213, 89 S. Ct. 1677 (1969), which further clarified and explicitly reaffirmed the principles of *Johnson*: "[W]e could have . . . made the point of initial reliance, the moment the defendant is interrogated, the operative event. But in an effort to extend the protection of Miranda to as many defendants as was consistent with society's legitimate concern that convictions already validly obtained not be needlessly aborted, we selected the commencement of the trial." Id. at 219, 89 S. Ct. at 1680-81.

Finally, we must reject the Commonwealth's claim that *Johnson* has been overruled *sub silentio* by the Supreme Court's more recent retroactivity cases fixing the date of the alleged constitutional violation rather than the date of trial as the operative cut-off date.[7]

---

"All of the reasons set forth above for making Escobedo and Miranda nonretroactive suggest that these decisions should apply only to *trials* begun after the decisions were announced."

. . .

"Prospective application only to *trials* begun after the standards were announced is particularly appropriate here."

. . .

"In the light of these additional considerations, we conclude that Escobedo and Miranda should apply only to *cases* commenced after those decisions were announced."

. . .

". . . and these guidelines [of *Miranda*] are therefore available only to persons whose *trials* had not begun as of June 13, 1966." 384 U.S. at 721, 732, 733, 734, 86 S. Ct. at 1775, 1780, 1781 (emphasis added).

[7] See, e.g., *Williams v. United States*, 401 U.S. 646, 91 S. Ct. 1148 (1971), holding *Chimel v. California*, 395 U.S. 752, 89 S. Ct. 2034 (1969), applicable to *searches* conducted after the date of *Chimel*; *Stovall v. Denno*, 388 U.S. 293, 87 S. Ct. 1967 (1967), holding *United States v. Wade*, 388 U.S. 218, 87 S. Ct. 1926 (1967), applicable only to cases where the *lineup* occurred after the decision in *Wade*.

There are, of course, "occasional situations in which subsequent Supreme Court opinions have so eroded an older case, without explicitly overruling it, as to warrant a subordinate court in pursuing what it conceives to be a clearly defined new lead from the Supreme Court to a conclusion inconsistent with an older Supreme Court case." *Rowe v. Peyton,* 383 F. 2d 709, 714 (4th Cir. 1967). But this is certainly not such a situation. *Johnson's* trial date rule has been reaffirmed by the Supreme Court as recently as April 5, 1971. See *Mackey v. United States,* 401 U.S. 667, 714, 91 S. Ct. 1160, 1164 (1971); *Williams v. United States,* 401 U.S. 646, 665 n. 7, 91 S. Ct. 1148, 1153 n. 7 (1971). Therefore, we are without constitutional authority to adopt a test for the retroactivity of *Miranda* which is inconsistent with *Johnson.* Additionally, we are in agreement with the rationale of *Johnson,* and we affirm it as a matter of state law. Cf. *Commonwealth v. Blackman,* 446 Pa. 61, 285 A. 2d 521 (1971).

The order of the Philadelphia Court of Common Pleas is reversed.

Mr. Justice JONES concurs in the result.

Mr. Justice O'BRIEN joined in the opinion of the Court and filed a concurring opinion.

Mr. Chief Justice BELL and Mr. Justice POMEROY took no part in the consideration or decision of this case.

---

CONCURRING OPINION BY MR. JUSTICE O'BRIEN:

I concur in the opinion of the majority and join in that opinion. In addition, however, I believe that the Commonwealth has followed a procedure in this matter which precludes any result other than the one arrived at by the majority.

As indicated in the majority opinion, the Philadelphia Court of Common Pleas entered its suppression

order on May 23, 1968. Since the Commonwealth had no other independent evidence of appellant's guilt, the effect of the suppression order was to put the Commonwealth out of court and the order was, therefore, as indicated by many, many cases, appealable. If the district attorney was unhappy with the suppression order, the proper course of action for him was to appeal that order within the time allowed for such appeals. He did not do so. Instead, nearly fifteen months later, he chose to request a rehearing of the suppression order in the trial court. I do not believe that we can countenance such procedures, and in my view the district attorney's failure to appeal the suppression order within the statutory time period precludes any further consideration of that order.