Robert CAMACHO, Appellant,

v.

UNITED STATES of America, Appellee.

No. 21736.

United States Court of Appeals Ninth Circuit.

Feb. 5, 1969.

Rehearing Denied June 20, 1969.

John J. Flynn (argued), David C. Schutter (argued), Charles D. Roush, Phoenix, Ariz., for appellant.

Lawrence Turoff (argued), Asst. U. S. Atty., Edward E. Davis, U. S. Atty., Morton Sitver, John L. Augustine, Asst. U. S. Attys., Phoenix, Ariz., for appellee.

Before HAMLIN and DUNIWAY, Circuit Judges, and BOLDT,* District Judge.

BOLDT, District Judge:

This is an appeal by Robert Camacho from a three-count conviction, following a jury trial, of federal bank robbery and related offenses in violation of 18 U.S.C. § 2113(a), (d) and (e), committed in Phoenix, Arizona, on or about October 19, 1962. Appellant was acquitted by the jury of the charge laid in the fourth count of the superseding indictment, alleging appellant had unlawfully abducted William Clore while seeking to avoid apprehension for the above offenses. District Court jurisdiction was founded on 18 U.S.C. § 3231. This court has jurisdiction under 28 U.S.C. § 1291. We affirm.

Appellant makes five specifications of error: (1) denial, in part, of appellant's motions to suppress evidence; (2) rejection as evidence of certain exhibits relied on by appellant for impeachment purposes; (3) unconstitutionality of 18 U.S.C. § 2113(e) as it relates to appellant's right of jury trial; (4) denial of appellant's motion for change of venue based on adverse publicity; (5) comment by the prosecuting attorney in closing argument on appellant's exercise of his right not to testify.

At approximately 12:30 p. m., October 19, 1962, a lone gunman held up a branch of the Valley National Bank, Phoenix, Arizona, and forced Robert Hasseries, the bank manager, to accompany him in effecting escape. Shortly after the gunman and Hasseries departed, another bank officer, William Clore, left the bank premises. Hasseries was released shortly after the kidnapping; Clore was never seen alive again. An investigation by the Federal Bureau of Investigation produced few immediate results and was continuing at the time the appellant was taken into custody almost three years later. The present appeal is from appellant's conviction of this offense.

At approximately 2:50 p. m., October 15, 1965, appellant was shot in the leg by police officers while attempting to escape from an abortive bank robbery at a branch of the Valley National Bank, Phoenix, Arizona. Appellant was taken to a hospital and treated for his injury, and during this time he was interrogated by an FBI agent. He was discharged by a doctor at approximately 7:15 p. m. and taken to the United States Marshal's office at the Federal Building in Phoenix, to await an appearance before the United States Commissioner. That same evening, before the Commissioner, appellant waived preliminary hearing, and was then required to participate in two identification line-ups. Following the line-ups, appellant was taken by automobile to the Federal Detention Center, Florence, Arizona.

The first specification of error is predicated on denial by the trial court of appellant's various motions to suppress

---

* Honorable George H. Boldt, United States District Judge, Western District of Washington, sitting by designation.

certain incriminating statements made by appellant after he had been treated' and medically discharged from the hospital. All statements made by appellant during his interrogation at the hospital were suppressed, but appellant contends these initial statements so "tainted" his later incriminating remarks as to render them similarly objectionable, relying on Silverthorne Lumber Company v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319, 24 A.L.R. 1426 (1920); Clewis v. Texas, 386 U.S. 707, 87 S.Ct. 1338, 18 L.Ed.2d 423 (1967); Harrison v. United States, 392 U.S. 219, 88 S.Ct. 2008, 20 L.Ed.2d 1047 (1968), and like authority.

■ To ascertain the precise factual context in which appellant's statements were made and the legal principles applied thereto, we directed the trial court to supplement the record with more detailed factual findings and legal conclusions concerning appellant's suppression motions. The supplemented record is now before us and this specification of error has been briefed and argued a second time. The statements by' appellant, resulting from questioning in the emergency ward of the hospital, were at first held admissible by the trial court, following a hearing conducted six months prior to the decision in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Although trial was scheduled for a date preceding *Miranda*, it was continued to October 24, 1966, at which time the motion to suppress was renewed and granted as to appellant's statements at the hospital. In view of the trial date, the requirements of *Miranda* became directly applicable to appellant's case by the time the

motion to suppress was renewed. Johnson v. New Jersey, 384 U.S. 719, 86 S. Ct. 1772, 16 L.Ed.2d 882 (1966).

The basis for granting appellant's motion regarding statements made at the hospital was language used in the then recent decision of Miranda, *supra*, decided June 13, 1966. Prior to any interrogation by an FBI agent at the hospital, appellant was advised that he need make no statement at all, that any statement he did make could be used against him in court, and that he had a right to counsel.[1] This warning was repeated at least once at the hospital and twice in the presence of the United States Commissioner after appellant was discharged from the hospital. In addition, appellant was advised at least once at the hospital and twice by the Commissioner that if he could not afford to employ counsel an attorney would be appointed to represent him.

However, upon renewal of the motion to suppress on the day of trial, five months after *Miranda*, the trial court accepted appellant's contention that, in addition to the foregoing express warnings, it was required that the right to have counsel present be more specifically explained by the interrogating officer as including not only the presence of counsel, but counsel's presence "at the time of interrogation." The trial court also accepted appellant's contention that the above warnings should have explicitly and expressly included the right to "terminate discussions at any time" as a part of the right to remain silent and the warning that any statements made could be used in court. For lack of these express explanations, statements made by appellant during interrogation at the

---

1. After preliminary ministrations of the doctor, appellant was advised of his rights the first time by Special Agent Morgan: "You know that you have rights to counsel, to an attorney, and that you don't have. to say anything in regard to this unless you have an attorney present, and also that anything you say about this can be used against you."

In his testimony at the first hearing on appellant's motion to suppress, appellant acknowledged both that he understood the warnings given him at the hospital and that he "did mention I didn't need a lawyer, since I had been caught at the scene." The warning was repeated in the presence of a court reporter who arrived in the emergency ward shortly after appellant was first advised of his rights.

hospital were not permitted to be used against him at trial. Some of these deficiencies were also found in warnings given appellant by the United States Commissioner.

■■ The statements thus excluded have no direct bearing on appellant's conviction or this decision; but, the circumstances surrounding appellant's capture, hospitalization and interrogation at the hospital, as reasonably found by the trial court from the evidence, are dispositive of the contention that such circumstances so impelled or "tainted" three later remarks by appellant that they too should have been excluded by reason of the same asserted constitutional deficiencies. The record before us, as supplemented, does not sustain this contention. On the day defendant made all the statements in question there was not the slightest coercion or misconduct of any kind chargeable to any arresting officer, federal agent or other law enforcement official under the facts found by the trial court. In our opinion, the safeguards afforded appellant at all stages of the proceedings against him exceeded constitutional requirements existing at the time of the events in question, and complied with the basic requirements of *Miranda* applicable at the trial eight months after that decision. While our conclusion differs from the trial court regarding this phase of the case, based on a detailed examination of available transcripts and supplemented findings, and is made with the benefit of authorities not available to the trial judge at the time of his rulings,[2] this does not directly affect the result herein. As to statements excluded, appellant suffered no prejudice and cannot complain. Whether the circumstances of appellant's initial statements so tainted his later remarks as to require similar suppression remains for our determination.

The three statements admitted as evidence at trial were made by appellant after he had been discharged from the hospital and removed to the Federal Building in Phoenix. One statement occurred prior to his appearance before the United States Commissioner. Another remark was made by appellant while awaiting an identification line-up, and after he had waived preliminary hearing before the Commissioner. The third remark occurred while appellant was being driven to the Detention Center at Florence, Arizona. Suppression of these remarks was denied by the trial court, on the ground appellant independently volunteered these statements, despite the warnings previously given him, at a time when appellant was not improperly influenced by either custodial pressure or the effect of his prior admissions at the hospital. To decide whether these statements were correctly admitted, or, as now contended, "tainted" by the first incriminating statements or custodial coercion, the circumstances surrounding appellant's capture and hospitalization must be considered, followed by an examination of the context in which each remark was made.

At the time of his arrest, appellant was a high school graduate, of above average intelligence, thirty-eight years of age. He had previous employment experience as a police officer for some six months with the Tucson Police Department. Until October 15, 1965, the day of his capture, appellant was an experienced business man in Nogales and Tucson.

Appellant was taken to the emergency ward of the Memorial Hospital in Phoe-

---

2. The precise words or nicety of language used in advising a suspect of his rights are not determinative; substance controls form. In United States v. Vanterpool, 394 F.2d 697 (2nd Cir., 1968), the court stated, at pages 698–699:

"The Assistant United States Attorney did not use the exact words of *Miranda* in warning appellant. The questioning took place before the *Miranda* decision was handed down. However, the words of *Miranda* do not constitute a ritualistic formula which must be repeated without variation in order to be effective. Words which convey the substance of the warning along with the required information are sufficient."

nix between 3:00 and 3:30 p. m. Upon arrival at the hospital, appellant was given a medical examination lasting from ten to fifteen minutes. He was coherent and not excited. Appellant was not actively bleeding and the wound itself was not serious. Although physically able to sign the hospital admission form, he did not do so. The attending doctor on duty in the emergency ward gave permission to interrogate appellant before he was taken for the first series of X-rays. Questioning was conducted intermittently by one FBI agent, in the presence of other officers and hospital personnel, at such times as did not interfere with necessary medical treatment. Appellant was taken to the X-ray laboratory in the hospital where an X-ray examination was undertaken, consuming forty-five minutes to one hour. He was medically examined thereafter for a period of fifteen to twenty minutes. He was returned to X-ray for another thirty-minute examination. The bullet which caused the injury was found not to have lodged in appellant's leg. The wound was repaired in fifteen to twenty minutes. Preparation, cleansing and cleaning-up consumed approximately forty-five minutes. On five occasions, appellant's pulse, respiration and temperature was taken. By 5:00 o'clock his pulse was ninety-six beats per minute, six beats above "normal". Appellant was given injections of tetanus vaccine and terramycin to control infections. The immediate site of the wound was treated with xylocaine, a local tissue anesthetic. Appellant did not lose consciousness at any time, nor was he administered any narcotics or derivative thereof. During his stay at the hospital he was never in a condition of shock and permitted to smoke cigarettes. Appellant rejected an offer of medication for pain as being unnecessary, "it wasn't that bad." Appellant was discharged from the hospital at 7:15 p. m., "stable" and in "good" physical condition. The intermittent interrogation by the agent at the hospital had consumed a total of approximately one and one-half hours.

From the hospital, appellant was taken to the office of the United States Marshal in the Federal Building to await an appearance before the United States Commissioner at about 8:00 p. m. that same evening. While waiting, appellant remarked to his single guard, "Well, I told them that I did it * * * I told them that I robbed the bank, but I didn't have anything to do with the Clore murder." He told his guard that, "as he was leaving the bank he saw Mr. Clore walking," and that a "line-up was a waste of time * * * they didn't need it * * * because he did it."

After his appearance before the Commissioner, and while awaiting an identification line-up, appellant remarked to the FBI agent who questioned him earlier at the hospital, that a line-up would be useless because Hasseries had seen him, appellant, in the federal building earlier that evening.

At approximately 10:00 p. m., following the line-up and while being driven to the Detention Center at Florence, appellant volunteered to his custodian in the automobile, "They are trying to tie me in with a blue station wagon * * on the Clore murder." Peck, the custodian, pointed out, "We are on the opposite sides of the fence * * * you have been before the Commissioner, your rights have been explained to you, including the right to an attorney * * if you have any * * * admissions * * * I would have to report them and they could be used in court." Appellant responded, "That's all right, I have already admitted the Clore bank robbery."

None of the three foregoing remarks by appellant were made in response to any question, suggestion or inquiry by the witnesses involved. All of the foregoing statements were devoid of the impulsion of coercive police conduct, interrogation or atmosphere. The circumstances of appellant's capture and medical treatment had no discernible effect, physical or mental, on these voluntary comments. He was an intelligent,

coherent and stable individual, in good physical condition. He understood the warnings given him. The evidence clearly and fully supports the trial court's findings: "[in] the three instances referred to, * * * the statements then made by the [appellant] were initiated by the [appellant]; were freely, intelligently, voluntarily and knowingly made; were not the result of, nor in the course of custodial interrogation; and were not related to, nor the result of prior custodial interrogation, nor the result of in-custody atmosphere."

The appellant was lawfully arrested and no unnecessary delay preceded his first appearance before the Commissioner. Rule 5, Federal Rules of Criminal Procedure; See, United States v. Hensley, 374 F.2d 341 (6th Cir., 1967), cert. den. 388 U.S. 923, 87 S.Ct. 2139, 18 L.Ed. 2d 1373 (1968). The advice given and understood, and the circumstances present at the hospital, did not require exclusion of appellant's initial statements. See: Miranda, *supra*; Vanterpool, *supra*, note 2; United States v. Anderson, 394 F.2d 743 (2nd Cir., 1968). The compulsive impact of a prior statement, if illegally obtained in the first instance, did not prompt appellant to testify at trial and was not used in any manner to influence his later conduct. Harrison v. United States, 392 U.S. 219, 88 S.Ct. 2008, 20 L.Ed.2d 1047 (1968).

In Deck v. United States, 395 F.2d 89 (9th Cir., 1968), we affirmed a trial court decision admitting an in-custody incriminating statement, "because it was volunteered, not because the full warning required by *Miranda* had been given." Whether or not the warnings were fully adequate in *Deck*—the trial court "had doubts"—the warning "at least made it clear that [the suspect] need not say anything and that anything he said could be used against him." The suspect then saw fit to volunteer the comments subsequently used against him. Deck, *supra*, page 90–91; See Williams v. United States, 391 F.2d 221 (5th Cir., 1968).

*Miranda*, itself, recognizes the result in circumstances such as now presented, at 384 U.S., page 478, 86 S.Ct. 1602, page 1630:

"In dealing with statements obtained through interrogation, we do not purport to find all confessions inadmissible. Confessions remain a proper element in law enforcement. Any statement given freely and voluntarily without compelling influences is, of course, admissible in evidence. The fundamental import of the privilege while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings and counsel, but whether he can be interrogated. * * * Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today."

Even if appellant's initial statements were "tainted" by some lack of precise wording in the warnings afforded him, appellant's later remarks were in no way subject to the same constitutional defect. Continuous official coercion and menace are elements strikingly absent from the record of events with which we are concerned, both at the hospital and later that evening. No stream of compulsion flowed from the first statements made while under interrogation, to the casual remarks later volunteered. The factors disclosing a connection of compulsive pressure in Clewis v. Texas, *supra*, are notably absent in this case. No official attempt, however subtle, was made, and no prior statement was used, to elicit the words spoken by appellant in the three instances here involved. Contrast: Silverthorne, *supra*; Wong Sun v. United States, 371 U.S. 471, 488, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); Westover v. United States, decided together with Miranda, *supra*, No. 761. Unlike the situation present in *Westover*, appellant was never subjected to a continual period of interrogation of any significant length of time. Warnings were given prior to any questioning and

later repeated; appellant articulated his understanding of the advice given; and, questioning had ceased at the hospital, before the first remarks were made at the Federal Building.

■ The four remaining specifications of error are without merit. The trial court did not abuse its discretion in denying admission of certain exhibits offered by appellant at trial for purposes of impeachment, when no proper foundation was laid therefor and no offer of proof forthcoming. Ramirez v. United States, 294 F.2d 277, 282 (9th Cir., 1961); Samish v. United States, 223 F. 2d 358 (9th Cir., 1955), cert. den. 350 U.S. 848, 76 S.Ct. 85, 100 L.Ed. 755 (1955); Zamora v. United States, 9 Alaska 680, 112 F.2d 631 (9th Cir., 1940).

■ Whatever the merits of the contention concerning invalidity of the death penalty provision, 18 U.S.C. § 2113 (e), as it relates to the right of trial by jury, Pope v. United States, 392 U.S. 651, 88 S.Ct. 2145, 20 L.Ed.2d 1317 (1968), no error was committed in this regard. The appellant was tried by a jury and acquitted of the fourth count of the indictment, pursuant to which that penalty was available. Appellant was not prejudiced by this provision, and, in any event, the death penalty clause is severable from the balance of the statute. 18 U.S.C. § 2113; United States v. Jackson, 390 U.S. 570, 585–591, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968), at 20 L.Ed.2d pages 149–152.

■ The pre-trial publicity given this case did not require a change of venue, and the trial court did not abuse its discretion in denying the same. Rule 21 (a), Federal Rules of Criminal Procedure. As suggested in appellant's brief, "only * * * [the] jurors can know what effect * * * publicity had on their decision." Each juror swore on oath that the publicity had not affected his attitude toward appellant, and each was sequestered from the beginning of trial until the verdict. There was no "carnival atmosphere" or other inherent cause of prejudice affecting the outcome of the deliberations of the jury. Estes v. Texas, 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1966); Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L. Ed.2d 600 (1966); Loraine v. United States, 396 F.2d 335 (9th Cir., 1968), cert. den. 393 U.S. 933, 89 S.Ct. 292, 21 L.Ed.2d 270 (1968).

■ The record of the argument to the jury for the prosecution negates the contention that an unconstitutional comment on defendant's failure to testify occurred at this stage of the trial. A reasonable factual link between the Clore disappearance and the person committing the robbery of the same day was suggested by the comment, nothing more. The knowledge of appellant as to the facts of these related occurrences was asserted by the prosecution, but the failure of appellant to testify in denial or explanation of this point was not suggested. See: Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965).

Affirmed.