Otis JORDAN, Jr., Appellant,

v.

UNITED STATES of America,
Appellee.

No. 23798.

United States Court of Appeals,
Ninth Circuit.

Jan. 29, 1970.

Rehearing Denied May 26, 1970.

Julian Herndon (argued), Robert Duncan (argued), Portland, Ore., for appellant.

Sidney I. Lezak (argued), U. S. Atty., Portland, Or., Jack G. Collins, Asst. U. S. Atty., Portland, Or., for appellee.

Before MADDEN,* Judge of the United States Court of Claims, DUNIWAY, Circuit Judge, and TAYLOR **, District Judge,

TAYLOR, District Judge:

The appellant (defendant below) was tried by the court, a jury having been waived, on a two count indictment, each count charging a violation of Title 18, United States Code, §§ 2 and 2314 [1] (the illegal transportation of falsely made, forged and counterfeit securities.) Count I charged the illegal transportation to have occurred on or about January 13, 1966, from Medford, Oregon to San Fran-

cisco, California. Count II charged the transportation occurred on or about May 16, 1966, from Las Vegas, Nevada to Portland, Oregon. Appellant was convicted and sentenced on Count I of the indictment and Count II was dismissed. A motion for a new trial was denied. This appeal is from the judgment of conviction and sentence and from the order denying a new trial. Appellant alleges nine specifications of error and after fully considering each of them, we affirm.

The record reveals that appellant's occupation has been construction work. In 1955 he formed his own construction firm, Pacific Concrete Company (Pacific), and developed it into a highly successful bridge building concern. Pacific did business principally in the State of Oregon. However, beginning about 1963 or 1964 Pacific began to suffer financially. In an effort to remedy this difficulty, the appellant sought out several sources for financing assistance. Among these was the Glens Falls Insurance Company (Glens Falls) located in San Francisco which was Pacific's surety on a performance bond issued to Pacific as the prime contractor for an uncompleted bridge construction job in Oregon. On January 13, 1965, appellant on behalf of Pacific obtained a one year loan from the Wells Fargo Bank in San Francisco

---

* Hon. J. Warren Madden, Senior Judge, United States Court of Claims, sitting by designation.

** Hon. Fred M. Taylor, United States District Judge for the District of Idaho, sitting by designation.

1. 18 U.S.C. § 2314. *Transportation of stolen goods, securities, moneys, fraudulent State tax stamps, or articles used in counterfeiting*

\* \* \* \* \*

"Whoever, with unlawful or fraudulent intent, transports in interstate or foreign commerce any falsely made, forged, altered, or counterfeited securities or tax stamps, knowing the same to have been falsely made, forged, altered, or counterfeited; \* \* \*
\* \* \* \* \*

"Shall be fined not more than $10,-000 or imprisoned not more than ten years, or both.

"This section shall not apply to any falsely made, forged, altered, counterfeited or spurious representation of an obligation or other security of the United States, or of an obligation, bond, certificate, security, treasury note, bill, promise to pay or bank note issued by any foreign government or by a bank or corporation of any foreign country."

18 U.S.C. § 2. *Principals*

"(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

"(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal."

in the sum of $400,000.00. Substantially all of Pacific's assets were pledged to Wells Fargo as security for the loan. Also, Glens Falls guaranteed the loan. Stock in the Nevada Historical Restoration Society (Nevada) valued at $350,-000.00 was pledged by appellant to Glens Falls for security on the guarantee. Three days prior to the due date of the loan, appellant visited San Francisco for discussions with Glens Falls and Wells Fargo in connection with the loan. Pacific was unable to pay off the note at this time. After negotiations Glens Falls paid off Pacific's note when due to Wells Fargo Bank, and the forged and counterfeit Oregon Portland Cement Company stock involved in Count I was exchanged by appellant for the Nevada stock. Appellant admitted that he transported the Oregon Portland Cement Company stock from Medford, Oregon to San Francisco on or about January 13, 1966.

Appellant was first contacted by the FBI on April 3, 1966. This contact concerned a matter immaterial to the charges brought against appellant.

On May 16, 1966, a complaint and warrant of arrest were issued against the appellant. The single charge contained therein became Count II, the dismissed count, of the indictment. He was arrested on May 17, 1966, at his home in Medford, Oregon by FBI Special Agents Ralph P. Himmelsbach and James J. Mullaney. About forty minutes later he was arraigned before Frank J. Van Dyke, United States Commissioner at Medford, Oregon.

■ Under specification of error I, appellant claims that the court erred by not suppressing certain illegally obtained admissions. It is evident that this specification of error lacks merit. When appellant was arrested on May 17, 1966, the agents interviewed him at his home. They subsequently interviewed him on that day and the following morning. Certain incriminating admissions were made by appellant at these interviews. Appellant's contention is that at the beginning of each interview he was not advised by the agents that he was entitled to the presence of an attorney prior to and during the questioning. Appellant asserts that he was merely informed that he was entitled to an attorney and that although he requested that an attorney be immediately contacted, the agents refused such request. This issue was raised by appellant prior to trial, by way of a "Motion to Suppress". On November 16, 1966, a hearing was had on this motion at which time the appellant and both FBI agents testified. At the conclusion thereof the court, by way of an oral opinion, ruled against appellant, holding that appellant had been adequately warned of his right to have the presence of counsel during the questioning and that no request for counsel had been made to the agents by appellant. Although the testimony was conflicting it is obvious that the court preferred to accept the testimony of the agents over the testimony of the appellant. The agents testified that prior to each and every interview appellant was advised of his rights. In regard to appellant's specific contention, agent Himmelsbach testified that agent Mullaney advised appellant at the time of arrest before starting any conversation with him that he "had the right to talk to a lawyer or any other person of his choice before making any statement whatever", and that appellant responded by stating that he understood his rights. Agent Mullaney testified that at the interview conducted subsequent to the arraignment, at 1:20 P.M. May 17, 1966, in the interview room of the jail, Mullaney advised appellant that he "had the right to consult with his attorney, James Redden, or any other person of his choice before making any statements," and appellant replied to the agents that he was well aware of his rights, having spoken recently with his attorney, James Redden, and that appellant desired to talk further with the agents. Agent Mullaney further testified that at the interview on May 17, 1966, at 8:30 P.M., the appellant was again advised "that he had a right to consult with his attorney, James Redden, before making any fur-

ther statements" and appellant replied that he was well aware of his rights, having been told by his attorney not to talk to the agents. Mullaney also testified that at the interview on the morning of May 18, 1966, at 8:30 A.M., appellant was again advised of his rights and appellant replied that he still wanted to talk to the agents. It should be noted that when appellant's attorney, James Redden, was advised by Mullaney a short time after the arraignment in the morning of May 17, 1966, that the FBI agents intended to discuss the matter further with appellant, Mr. Redden merely shrugged his shoulders. The agents further testified that they had no recollection of appellant requesting the presence of counsel upon arrest as claimed by appellant. It is clear that there is substantial evidence in the record to support the court's finding.

■ Appellant next contends that he could not and did not voluntarily and intelligently waive his rights. It is asserted by appellant that he was not sufficiently informed of his rights to enable him to effect a knowing and intelligent waiver. We hold that the warnings given appellant by the FBI agents at the commencement of each and every interview with him were adequate under Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L.Ed.2d 694. Cf. Camacho v. United States, 407 F.2d 39 (9th Cir. 1969); and United States v. Vanterpool, 394 F.2d 697 (2d Cir. 1968). It is argued by appellant that because he did not make any recorded response to the warnings and because his attorney was not present at any of these interviews he could not and did not make an affirmative waiver. We are not referred to any authority in support of such propositions, and know of none. The trial court held that appellant knowingly and intelligently waived his rights and did so voluntarily. We agree. It clearly appears from the record that appellant knew and understood at all times what his rights were and what he was doing during these interviews. In fact, his attorney fully apprised him of such rights and advised him not to discuss the case with the agents, but disregarding this advice the appellant willingly and voluntarily did so without being forced or coerced. It should be noted that appellant was a man of above average intelligence and at one time a successful business man.

■ Appellant further asserts that all admissions at the three interviews subsequent to arraignment were coerced and involuntary because the interviews were conducted in the jailhouse, without the presence of counsel or a friend and were carried on for a total of about three and one quarter hours over a time period of 20 hours. However, the record supports the finding of the trial court that the admissions were voluntary and made of appellant's free and rational choice. Appellant had advice of retained counsel during the entire period of time covering these three interviews. There is every indication that appellant was very willing and anxious to co-operate with the agents.

■ In specification of error II it is claimed that the court erred by not suppressing certain illegally obtained real evidence. The trial court held that the stock certificates were voluntarily surrendered to the agents by appellant and that there was no actual seizure by the agents. We agree. When appellant was arrested at his home there was a discussion concerning the certificates. After being advised of his rights, appellant produced three attache cases at the request of agent Mullaney. Appellant did not wish to hand over the attache cases at this time and he carried them to the FBI car and deposited them in the trunk of that car. After the arraignment and consultation with his attorney, appellant expressed his desire to give the certificates to the agents. He was immediately advised again of his rights which he acknowledged to understand. Nevertheless, he took the attache cases from the car and into the Sheriff's Office near the jail where he opened the cases, took out two manila file folders containing the certificates and handed them to Himmelsbach.

498

In specification of error VII it is claimed that the court erred in finding defendant sane beyond a reasonable doubt in light of all the evidence. A question is raised as to the sufficiency of the evidence to support the court's finding. Although there is conflicting evidence in the record, we find there is substantial and competent evidence to support the finding that appellant was sane at the time he committed the offense contained in Count I. The testimony of Dr. Blachly, a person qualified as an expert to express medical and psychiatric opinions, sufficiently supports the court's finding, and this contention has no merit.

The court made and entered a judgment of conviction on Count I of the indictment on December 12, 1966, and ordered that appellant be committed for study under and pursuant to 18 U.S.C. § 4208(c) prior to sentencing. On March 29, 1967, following the completion of said study at the Medical Center in Springfield, Missouri, the court sentenced appellant to serve a term of imprisonment of five years including the time already served. In specification of error VIII appellant claims that the court erred by not affording him an adequate opportunity to place all mitigating information before the court before the imposition of sentence and judgment. He contends that it was error for the court not to grant his motion to have Dr. Joel J. Haffner brought from Springfield by order of the court as an expert witness at the time appellant was sentenced. Dr. Haffner had made and submitted a full report in regard to appellant, which report the court had for study and consideration at the time sentence was imposed. This report is in the record. There is nothing in the record to indicate that Dr. Haffner's personal appearance before the court would have contributed any information other than that contained in his report. We find that there is no merit in this contention of the appellant.

In specification of error IX it is claimed that the court erred by not granting defendant's motion for a new trial and by not giving appellant an adequate hearing on the motion. On March 14, 1969, appellant filed a motion for new trial based on newly discovered evidence. On April 4, 1969, the court conducted a hearing on such motion. Prior to the hearing appellant requested the court to require the appearance of "hospital personnel" from Springfield to testify in support of his motion. At the hearing the court had before it the reports from Springfield and the Social Security Commission concerning appellant. The court found that the alleged newly discovered evidence in regard to appellant's insanity was precisely of the same nature offered at the trial. We find this assignment is without merit.

We next consider specifications of error III, IV, V, and VI, to the effect that the court erred by not suppressing all evidence obtained subsequent to appellant's arrest on the grounds of an illegal arrest; that the court erred by proceeding with the trial despite considerable undue publicity; that the court erred by accepting the defendant's waiver of a jury trial; and that the court erred by finding the defendant competent to stand trial because it did not use a proper test for competency. We find no plain error which might affect the substantial rights of appellant, nor do we find any error which would result in a manifest miscarriage of justice. Appellant was given a fair trial and properly convicted of the charges contained in Count I. Cf. Gilbert v. United States, 307 F.2d 322 (9th Cir. 1962).

We affirm.