Hillard Elmer SMITH, Petitioner,

v.

C. C. PEYTON, Superintendent, Virginia State Penitentiary, Respondent.

Civ. A. No. 68–C–26.

United States District Court
W. D. Virginia,
Danville Division.

Dec. 9, 1968.

Reno S. Harp, III, Asst. Atty. Gen., Richmond, Va., for respondent.

Opinion and Judgment

DALTON, Chief Judge.

This proceeding is before this court upon remand from the Court of Appeals for the Fourth Judicial Circuit 408 F.2d 1009 for a determination of the merits of a petition for habeas corpus filed in forma pauperis by Hillard Elmer Smith, a prisoner in the Virginia State Penitentiary. The Fourth Circuit has found that the petitioner has exhausted his state remedies, and the question to be considered herein is whether a confession by Hillard Elmer Smith, which became the sole basis of his conviction in the state court for breaking and entering, was properly admitted into evidence by that court under the rationale and requirements of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Preliminarily, we note that immediately prior to petitioner's trial and out of the presence of the jury the trial judge held a hearing on the question now before this court, at which time the petitioner and the sheriff, to whom the confession was made, testified fully. The ruling of the trial judge and his reasoning appear in the transcript. Consequently, this court is not required to hold further inquiries into the circumstances leading to petitioner's confession. Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).

The transcript of the pre-trial hearing reveals that the petitioner lost the "swearing contest" between police and prisoner which almost invariably results when a confession is attacked by its author as involuntary in a criminal proceeding. Where the testimony of the police and the accused conflict, it is not surprising when the court chooses to accept the word of the authorities, as did the trial court in this case.

The testimony of the sheriff at the pre-trial hearing discloses that Smith, the petitioner, was arrested in Morganton, North Carolina, on November 29, 1965, in connection with the theft of two cows in Henry County, Virginia. That night the petitioner was removed to Henry County in the custody of the sheriff's deputies after the petitioner had waived extradition. The next day

the sheriff questioned the petitioner in the sheriff's office about the cattle theft after Smith had first been admonished by the sheriff, "You know that you don't have to make a statement to me. You are entitled to counsel and any statement that you make to me can be used against you in court." Smith was then questioned concerning the written statement which he gave the authorities in Morganton, North Carolina, on the previous day. The breaking and entering of a local store, for which Smith was ultimately convicted, was not mentioned during this conversation. After this questioning Smith was returned to his cell. According to the sheriff, he had no further conversations with Smith during the next two weeks. On December 15, 1965, the sheriff received word that Smith desired to talk to him. Smith was brought to the sheriff's office, where Smith initiated the conversation by informing the sheriff that he possessed information which would assist the sheriff in solving some local thefts, and that he could be persuaded to divulge the information if he could be assured that he would receive a suspended sentence on the cattle theft charge. The sheriff informed Smith that his punishment was up to the court and that he, the sheriff, could not make any assurances. Thereupon, Smith, prefacing his remarks with, "I hate to incriminate myself," proceeded to do just that by describing in some detail how he and three others broke into a local store, stole several items, and sold them that same night to a local entrepreneur. After the story had unfolded the sheriff questioned Smith about various details. Smith was not advised of his rights either before or during this confession, and at no time did Smith indicate reluctance to answer the sheriff's queries. Smith was then returned to his cell and the sheriff undertook to verify Smith's story by questioning those persons which Smith had implicated.

The next day Smith's confession was reduced to writing and signed by him. At the top of the typed confession there was printed several paragraphs which stated, in effect, that Smith was aware of his privilege against self-incrimination, his right to counsel, and voluntarily waived both; that any statement he made could be used against him in court; and that the following confession was made without threats of physical harm or coercion, and without offer of leniency or favor. The sheriff testified that these paragraphs were read to Smith prior to his signing the confession.

Except as it affects Smith's credibility in claiming that the confession was induced by the promise of leniency, whether or not the sheriff read this printed matter to Smith is not relevant to the main issue herein considered for reasons set out below.

Smith's explanation of his confession differs in several material respects from the sheriff's. Smith denies that he was advised of his rights when first questioned by the Henry County Sheriff on November 29th. Smith testified that the sheriff inquired as to the names of two persons which Smith had referred to in the statement he had given the sheriff of Morganton, North Carolina. At first Smith refused to disclose the names, but changed his mind when the sheriff reminded him that unless Smith cooperated the sheriff could not assist Smith in getting his bond lowered. Convinced of the sheriff's sincerity, Smith then gave the sheriff the names. although the sequence of events during the next two weeks are not entirely clear from Smith's testimony, it appears that the people whom Smith had inculpated were questioned by the sheriff without success. Smith admits that on December 15 he asked to talk to the sheriff concerning his bond. In their conversation the sheriff inquired whether Smith had any information about several unsolved crimes, including the breaking and entering for which Smith now stands convicted. Smith gave him information and names without incriminating himself at that time, whereupon Smith was returned to his cell. Later that day

Smith was recalled to the sheriff's office and informed that the people which he had named had flatly denied everything, and that if Smith would tell how he knew of their criminal activities and could bring about their convictions, the sheriff would see that Smith was released without bond. "And that is when I incriminated myself," Smith testified. Further, Smith stated that at no time was he advised of his right to remain silent or of his right to counsel, retained or appointed, and that the statement which he signed was a complete fabrication devised solely for the purpose of securing a favorable sentence.

It can be seen that as to all material facts the testimony of the sheriff and Smith is in irreconcilable conflict. Although the sheriff's side of the story raises questions as to Smith's motivations in confessing, it is not incredible. The trial judge chose to accept the sheriff's testimony in its entirety, and the jury, after hearing virtually identical testimony, apparently did the same. We note that Smith cast doubt upon his own honesty when he testified that the confession was completely false. Since both the trial judge and the jury disbelieved the petitioner, this court finds nothing in the record which would require it to disregard the findings of the trial court. Even though we must make an independent determination in this type of proceeding, credibility of the witnesses is best left to the determination of the trial judge and jury. See Haynes v. Washington, 373 U.S. 503, 515–16, 83 S. Ct. 1336, 10 L.Ed.2d 513 (1963).

Accepting the sheriff's account, Smith's allegation that his confession was induced by the false hope of a lenient sentence cannot be sustained.

We next consider whether the procedural safeguards of petitioner's privilege against self-incrimination, as announced in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602 (1966), apply to the facts of this case, and if so, whether the Miranda standards were in fact met.

Smith's trial was held October 6, 1966, and there can be no doubt that Miranda, decided June 13, 1966, applies even though the crime and the confession occurred prior to that date. Johnson v. New Jersey, 384 U.S. 719, 86 S. Ct. 1772, 16 L.Ed.2d 882 (1966), gave the Miranda decision prospective application, and the date of the trial is determinative. Id., 384 U.S. at 721, 86 S.Ct. 1772. This fact was recognized by the trial court in ruling that the Miranda safeguards did not apply, and assuming that they did apply, Smith was fully advised of his rights prior to his confession as required by Miranda.

The reasoning of the trial judge was as follows:

> On November the 30th * * * according to Sheriff Witt, after being fully advised of all his rights in relation to counsel and what not, [the defendant] was questioned by the sheriff about the * * * theft of two cows. On the 15th day of December * * * the sheriff was advised that the defendant had expressed a desire to talk to him, about what the sheriff has testified that he did not know. The defendant was brought down and began this conversation with the sheriff, and he used an expression which I think indicates very clearly that the defendant was fully cognizant of any and all rights that he might be entitled to, and I quote: "I hate to incriminate myself" * * *. He knew that he was going to make a statement that would probably involve him. I think it was vitally significant that we recognize that Hillard Elmer Smith was the moving party in this questioning. He wanted to see the sheriff. He expressed a desire to see the sheriff. The sheriff did not call for him. The sheriff did not initiate this conversation, and the sheriff has testified that when Hillard Smith began to talk to him that he did not know the subject of the conversation. Now, if I give full credit to the statement of the sheriff, it was obvious

that Hillard Elmer Smith had in mind working out some kind of an arrangement or deal with perhaps the Commonwealth's Attorney through the Sheriff's Office whereby he might receive a suspended sentence. * * * Be that as it may, the oral statement was made, I say, voluntarily, freely, knowingly on the part of the accused. * * *

The ruling of the trial judge that the procedural safeguards of *Miranda* did not apply was based on the following passage from the *Miranda* opinion:

In dealing with statements obtained through interrogation, we do not purport to find all confessions inadmissible. Confessions remain a proper element in law enforcement. Any statement given freely and voluntarily without any compelling influence is, of course, admissible in evidence. The fundamental import of the privilege while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings and counsel, but whether he can be interrogated. There is no requirement that police stop a person who enters a police station and states that he wishes to confess to a crime, or a person who calls the police to offer a confession or any other statement he desires to make. Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today. 384 U.S. at 478, 86 S.Ct. at 1630.

We agree with the trial judge that the full *Miranda* warnings were not required under the rather unique facts of this case. We agree further that Smith's confession was voluntary under pre-*Miranda* tests.

With the exception of the fact that Smith was confined in the Henry County jail at the time he volunteered his confession, the facts of this case present a situation analogous to that, as described in the above-quoted excerpt of the *Miranda* opinion, of a man walking into a police station and confessing to a crime. While the analogy is less than perfect, since the fact of Smith's incarceration for more than two weeks cannot be wholly ignored, we read the Supreme Court's hypothetical case of the voluntary confession in the context of a preceding passage from the same opinion:

Our holding will be spelled out with some specificity in the pages which follow but briefly stated it is this: the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. *By custodial interrogation, we mean questioning initiated by law enforcement officers* after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. [Emphasis added.] 384 U.S. at 444, 86 S.Ct. at 1612.

The key phrase here, "questioning initiated by law enforcement officers," distinguishes the facts in this case from those cases where, in the absence of the full *Miranda* warnings, "a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel." Miranda v. Arizona, 384 U.S. 436, 475, 86 S.Ct. 1602, 1628 (1966). Escobedo v. Illinois, 378 U.S. 478, 490, n. 14, 86 S.Ct. 1758, 12 L.Ed.2d 977 (1964). Here Smith "incriminated" himself without prod or promise from the sheriff. We have discovered no precedent requiring that the police recite the full *Miranda* warnings prior to an unanticipated and unsolicited confession.

We therefore find no merit in the petitioner's contention that his confession was obtained at the expense of his privilege against self-incrimination or his right to counsel.

Although Smith does not allege that his confession was coerced, we have considered the record in the context of pre-*Miranda* tests of voluntariness, and

we agree with the trial court that the confession was made "freely, voluntarily and without compulsion or inducement of any sort." Wilson v. United States, 162 U.S. 613, 623, 16 S.Ct. 895, 899, 40 L.Ed. 1090 (1896). Haynes v. Washington, 373 U.S. 505, 513, 83 S.Ct. 1336 (1963).

Accordingly, it is hereby adjudged and ordered that the petition be dismissed and relief denied.

The clerk is directed to send a copy of this opinion and judgment to the petitioner and to the respondent.