339 F.Supp. 571 (1972)
James E. REDUS, Petitioner,
v.
Harold R. SWENSON, Warden, Missouri State Penitentiary, Respondent.
No. 71 C 738(3).
United States District Court, E. D. Missouri, E. D.
February 29, 1972.
*572 James E. Redus, pro se.
John C. Danforth, Atty. Gen., State of Mo., and Kenneth M. Romines, Asst. Atty. Gen., Jefferson City, Mo., for respondent.

MEMORANDUM AND ORDER
WEBSTER, District Judge.
James E. Redus, currently confined in the Missouri State Penitentiary, petitions this court for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner is serving a 20 year sentence after pleading guilty to second degree murder in the Circuit Court of the City of St. Louis on November 3, 1966. In support of his application for writ of habeas corpus, petitioner alleges that: 1) the trial judge's examination of petitioner prior to accepting the guilty plea was inadequate under Missouri Supreme Court Rule 25.04 and under applicable federal standards; 2) his plea of guilty was involuntary since it was the product of a coerced confession; and 3) he was denied effective assistance of counsel. On March 17, 1970 petitioner filed a motion to withdraw his guilty plea and to vacate unlawful judgment and sentence pursuant to Missouri Supreme Court Rules 27.25 and 27.26, V.A.M.R. Petitioner was appointed counsel, and, after an evidentiary hearing, the Circuit Court denied relief and the Missouri Supreme Court affirmed on appeal (Redus v. State, 470 S.W.2d 539 (Mo.1971)). Respondent has included a transcript of the evidentiary hearing in his response to this court's order to show cause.
Testimony at the evidentiary hearing indicates that petitioner was arrested at about 3:45 p. m. on April 9, 1966 in connection with the murder of a Joseph Klearman and that he was questioned about the killing over the next two or three days. At the evidentiary hearing, petitioner claimed that he was given only one meal throughout this period and that the police threatened to beat him if he did not give them a statement. He testified that he requested to consult with a lawyer and to see "his people" several times, but that his requests were denied. He denied confessing to the murder.
A Detective James Cox of the St. Louis Metropolitan Police Department testified that he personally began questioning petitioner at approximately 9:00 a. m. on April 10 and that the questioning continued "off and on" from 9:00 a. m. to 4:30 p. m. on April 10, 11 and 12. According to Cox, the longest period of interrogation was about an hour. He said that the police would stop the questioning to check out information petitioner provided them and then would return to continue the interrogation. Cox testified that police did not threaten petitioner and that they permitted him to call his family. Cox also stated that he advised petitioner of his right to be represented by an attorney and that the court might appoint an attorney for him. He testified that he did not advise petitioner of his right to have an attorney present nor that a court might appoint an attorney to represent him during the interrogation. The officer testified that petitioner made several statements implicating himself during the interrogation and that a stenographic confession to the murder was taken by the Circuit Attorney's office. Petitioner did not sign this confession. Subsequently, petitioner was charged with first degree murder.
Henry G. Morris, who was one of two lawyers appointed to represent petitioner at trial, testified at the Rule 27.26 hearing that when petitioner told him about the confession allegedly recorded by the Circuit Attorney's office, he filed a motion to suppress, that an evidentiary hearing was held on the motion and that petitioner testified at that hearing. The motion to suppress was denied by the trial court. There is no transcript of proceedings held in connection with the motion to suppress in the record and the court is not able to determine the basis upon which the trial court denied the motion. Morris also testified that both he and petitioner's other appointed trial counsel co-operated *573 in consulting with petitioner, in investigating the facts of the case and in seeking to interview witnesses. Morris stated that he invoked the rules laid down by the United States Supreme Court in Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L.Ed.2d 694 (1966) in support of the motion to suppress.
On the week before the case was set for trial, the Circuit Attorney agreed to permit petitioner to plead guilty to second degree murder and to recommend a sentence of fifteen years. Morris testified that he discussed the offer with petitioner and advised petitioner that he "would do better pleading guilty than running the risk of getting the death penalty." At the Rule 27.26 hearing, Morris testified that he gave this advice because first degree murder carried a minimum sentence of life imprisonment and possible death. If petitioner went to trial, a jury would probably be presented with evidence of the incriminating statements alleged to have been recorded by the Circuit Attorney's office. Morris felt that petitioner could not afford to take the stand to challenge the confession evidence because petitioner had several prior convictions which could be used to attack his credibility on cross-examination. Morris testified that he spent "considerable time" explaining the situation to petitioner. He testified that he told petitioner of his right to jury trial, the nature of the charges pending against him and explained that in the event of trial, punishment would be set by the court.
Petitioner agreed to plead guilty and to accept a sentence of fifteen years, but the trial judge indicated at this time that he would not accept a guilty plea on these terms, as he thought the punishment should be twenty years. Morris conveyed this to petitioner and petitioner agreed to enter a plea of guilty to second degree murder with the understanding that he would receive a sentence of twenty years.
A transcript of proceedings in the trial court at the time petitioner pleaded guilty was introduced into evidence at the Rule 27.26 hearing and is part of the record here. This transcript appears as follows:
TRANSCRIPT OF ORAL PROCEEDINGS HAD ON NOVEMBER 3, 1966, BEFORE THE HONORABLE ROBERT L. ARONSON, JUDGE, WITH REFERENCE TO DEFENDANT'S PLEA OF GUILTY AND SENTENCE PRONOUNCED

APPEARANCES
Mr. Joseph Walsh, Assistant Circuit Atty., for plaintiff;
Mr. Joseph J. Nitka and Mr. Henry Morris, attorneys for defendant
THE COURT: This is James Edward Redus, R-e-d-u-s. 906-0 is the case. Mr. Walsh represents the State. Mr. Nitka and Mr. Henry Morris stand beside the defendant as his counsel. I understand, Mr. Walsh, you are going to reduce the charge first?
MR. WALSH: Yes, your Honor. If the Court please, at this time the State will reduce the charge from murder in the first degree to murder in the second degree.
THE COURT: That being done, what is the defendant's announcement?
MR. MORRIS: The defendant will plead guilty.
THE COURT: Do you pronounce the name "Reedus" or "Reddus"?
THE DEFENDANT: "Redus".
THE COURT: Now, Mr. Redus, did you authorize Mr. Morris to make that statement? Do you now plead guilty?
THE DEFENDANT: Yes, sir.
THE COURT: And you know in pleading guilty that there is always some punishment attached to the plea of guilty in a murder case?
THE DEFENDANT: Yes.
THE COURT: You have had the advice of Henry Morris and Mr. Nitka, your appointed attorney, is that right?
THE DEFENDANT: Yes.
*574 THE COURT: You have talked about this extensively over the past several days and some time this afternoon too, if I understand correctly?
THE DEFENDANT: Yes, sir.
THE COURT: Now go ahead, Mr. Walsh; you may make a statement. I know more about this. The record may show that I have conferred with counsel on both sides, which I rarely do but did in this instance, but still, for the record, you ought to make a brief statement, at least, of the facts.
MR. WALSH: That's correct. The State's evidence shows that on April 9, 1966, approximately 4:30 in the afternoon, this defendant in company with another man named John Watson, this man being a direct employe of Mr. Joseph Klearman, who operated Klearman Company, 4046 Evans Avenue, in the City of St. Louis, being the driver of this coal truck, Watson being a part-time assistant. Actually, in fact, Redus more than Klearman, began an altercation in the office, which, according to a statement of this defendant, somewhat self-serving in nature, was preceded by a minor accident to the victim's truck. The victim was unhappy with this. This defendant claimed that the victim had swung the first blow at him with an iron bar, and then he struck the elderly gentleman with it, about 70 years of age, and at that time the co-defendant Watson was in a nearby saloon and he came out, joined in and also struck the elderly gentleman. That then this defendant, in concert with Watson, rummaged through the elderly gentleman's pants pockets, removed a small amount of money, approximately $5.00, $4.50, and the keys to his car, which Watson used to escape, and demolished the car in the course of that. The defendant has a prior record, having been convicted in 1957 and sentenced to two years for sodomy, and in 1963 for assault with intent to ravish, and based on the evidence and the statements and a conference with this Court, the State will make a recommendation of twenty years in the Department of Corrections.
THE COURT: I think it is well that the record show that you made that recommendation in part because of problems that you will obviate by this disposition, with respect to the admissibility of some evidence, although it's not clearly established as to what a trial Judge would do.
MR. WALSH: That is correct, your Honor.
THE COURT: All right, I am going to follow this recommendation in this instance, and so, James Redus, on your 
MR. WALSH: Your Honor, if I may interrupt  No, I will withdraw it. Go ahead.
THE COURT: James Redus, on your plea of guilty to the offense of murder in the second degree, in this case 906-0, it is the sentence and judgment of the Court that you serve a term of twenty years in the Department of Corrections of the State of Missouri.
Now bring Watson into court.
MR. MORRIS: Judge, what about the jail time?
THE COURT: Whatever the jail time is will be allowed.

Exhaustion of State Remedies.
On appeal from denial of petitioner's motion to withdraw the guilty plea and to vacate sentence, the Missouri Supreme Court specifically found petitioner's plea had been voluntary and that any deficiencies in the trial court's failure to comply with Missouri Supreme Court Rule 25.04 in determining that the plea was entered understandingly and voluntarily caused petitioner no prejudice. Respondent concedes and the court finds that petitioner has exhausted state remedies on these contentions as required by 28 U.S.C. § 2254(b).
Respondent submits that petitioner has not exhausted state remedies on the ineffective assistance claim. This claim was asserted before the Circuit Court on petitioner's Rule 27.26 motion, but the Supreme Court considered it abandoned on appeal, apparently because it was not *575 raised in the brief filed by counsel appointed to represent petitioner in the state post-conviction proceedings. Petitioner maintains that he never intended to abandon the claim and that he only became aware that counsel had omitted the claim upon receiving a copy of counsel's brief after it had been filed with the Missouri Supreme Court. Petitioner alleges that at such time he wrote his attorney to determine if it was permissible for him to file his own additional papers and that he submitted a supplemental brief arguing the ineffective counsel claim shortly thereafter. Petitioner's supplemental brief was filed in the Missouri Supreme Court on July 19, 1971. The decision in petitioner's case was handed down on September 13, 1971. Respondent states that the docket of the Missouri Supreme Court shows that the case was submitted to the court on May 17, 1971 and that petitioner's supplemental brief was not considered because it was untimely.
The doctrine of exhaustion of state remedies is a rule of comity and need not be mechanically applied where the state court, for procedural reasons, has refused to pass upon the merits of a question. Losieau v. Sigler, 421 F.2d 825, 828 (8th Cir. 1970). Under the facts of this case, petitioner's failure to file his supplemental brief before his cause was submitted to the Missouri Supreme Court cannot be considered a deliberate choice to abandon his appellate rights. Walker v. Smith, 439 F.2d 392, 394-395 (5th Cir. 1971). Petitioner's supplemental brief was filed almost two months before the Missouri Supreme Court rendered its decision and it clearly presented the identical claim of ineffective assistance of counsel which is asserted in his application for federal habeas corpus relief. The late filing of the supplemental brief did not constitute a deliberate bypass of state remedies precluding petitioner from asserting his ineffective counsel claim in federal court. Anderson v. Nelson, 390 U.S. 523, 525, 88 S.Ct. 1133, 20 L.Ed.2d 81 (1968).

Examination Prior to Acceptance of the Guilty Plea.
Habeas corpus is not a remedy for collaterally attacking errors in trial procedure. Durham v. Haynes, 368 F.2d 989, 990 (8th Cir. 1966), cert. denied 390 U.S. 959, 88 S.Ct. 1054, 19 L.Ed.2d 1154 (1968); Atwell v. State of Arkansas, 426 F.2d 912, 915 (8th Cir. 1970); Wilson v. Nebraska, 316 F.2d 84, 86 (8th Cir. 1963). It is only where trial errors or irregularities infringe upon a specific constitutional protection or are so prejudicial as to amount to a denial of due process that a justiciable issue is presented in a habeas corpus proceeding. Atwell v. State of Arkansas, supra, 426 F.2d at p. 915; Scalf v. Bennett, 408 F. 2d 325, 327 (8th Cir.), cert. denied 396 U.S. 887, 90 S.Ct. 175, 24 L.Ed.2d 161 (1969). On petition for habeas corpus this court will not review the trial court's compliance with Missouri Supreme Court Rule 25.04. Its inquiry is limited to a determination of whether or not the acceptance of petitioner's plea was in accordance with federal constitutional standards.
The transcript of petitioner's plea of guilty does not show that the trial court made inquiry into the voluntariness of the plea. The plea would therefore be insufficient under the standards set forth in Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L. Ed.2d 274 (1969). In Boykin, the United States Supreme Court held that acceptance of a defendant's guilty plea, where the record does not show that such plea is entered voluntarily and understandingly, constitutes reversible error as a matter of law (395 U.S. 238, 244, 89 S. Ct. 1709). However, Boykin is not given retroactive application. Meller v. Missouri, 431 F.2d 120, 124 (8th Cir. 1970), cert. denied 400 U.S. 996, 91 S.Ct. 469, 27 L.Ed.2d 445 (1971); Crosswhite v. Swenson, 444 F.2d 648, 650 (8th Cir. 1971). The validity of the acceptance of petitioner's guilty plea and the fact that it was voluntarily and understandingly entered must be measured by the totality *576 of the circumstances surrounding it. United States ex rel. Hill v. Rundle, 329 F.Supp. 783, 784 (E.D.Pa.1971). In this connection, at the Rule 27.26 hearing, petitioner's trial counsel testified that he discussed all phases of the case with petitioner and that petitioner was fully informed of options available including jury trial. Petitioner denied that he was informed of his right to a jury trial, but the state court reliably found counsel's testimony credible. Petitioner himself testified that his attorney told him that the maximum penalty for murder in the first degree was death and that in the event of trial, the police would probably use his confession against him. Petitioner further testified that he entered his plea because he did not want to take a "rap" for first degree murder and because his lawyer said that he had no choice, either plead guilty or risk death. The record demonstrates that petitioner was sufficiently aware of the charges and the choices available to him to enter an understanding plea of guilty to the charge of second degree murder. The court now considers whether the plea was entered voluntarily.

Involuntary Plea of Guilty.
Only one ground is asserted in support of the contention that the plea was entered involuntarily. Petitioner claims that he pleaded guilty solely because of the threat that the incriminating statements alleged to have been recorded by the Circuit Attorney's office would be introduced at his trial. He contends that the testimony of Officer Cox at the Rule 27.26 hearing discloses that any statements recorded by the Circuit Attorney's office were obtained in violation of the United States Supreme Court's decision in Miranda v. Arizona, supra, and argues, "For this reason, the confession was used as a club of coercion to the [petitioner] to force him to plead guilty. If the confession was invalid, then the plea of guilty must necessarily be a coerced one and also invalid."
Under the Supreme Court's decision in Miranda v. Arizona, supra, prior to subjecting any suspect to in-custody interrogation, police are required to warn him (1) that he has a right to remain silent, (2) that any statement he does make will be used against him in a court of law, (3) that he has the right to consult an attorney and have one present during interrogation and (4) that if he cannot afford an attorney and desires one, one will be appointed him. If such warnings are not given, any statement elicited from one in custody may not be used against him at trial. The guidelines in Miranda are available to persons whose trials had not begun as of June 13, 1966, the date Miranda was handed down. Johnson v. New Jersey, 384 U.S. 719, 734, 86 S.Ct. 1772, 16 L. Ed.2d 882 (1966). The police interrogated petitioner in April of 1966. The record shows that the motion to suppress was heard on October 17, 1966. Petitioner's plea of guilty was entered on November 3, 1966. The Miranda rules apply to petitioner's case even though the interrogation took place before that decision was handed down. Camacho v. United States, 407 F.2d 39 (5th Cir.), cert. denied 396 U.S. 944, 90 S.Ct. 380, 24 L.Ed.2d 245 (1969); Groshart v. United States, 392 F.2d 172 (9th Cir. 1968); Baines v. United States, 426 F.2d 833 (5th Cir. 1970); Evans v. United States, 375 F.2d 355 (8th Cir. 1967); United States v. Fox, 403 F.2d 97 (2d Cir. 1968); United States v. Vanterpool, 394 F.2d 697 (2d Cir. 1968); Griffith v. Jones, 283 F. Supp. 794 (N.D.Ga.1967); Smith v. Peyton, 295 F.Supp. 1379 (W.D.Va.1968).
The testimony of Officer Cox at the Rule 27.26 hearing indicates that police may not have satisfied the stringent requirements of Miranda in questioning petitioner, but the court does not find it necessary to decide the point. A competently counseled defendant who alleges that he pleaded guilty because of a prior coerced confession is not, without more, entitled to habeas corpus relief. McMann *577 v. Richardson, 397 U.S. 759, 771, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970). Even if it is assumed that petitioner's plea was motivated by a prior coerced confession, it is not rendered invalid so long as in pleading guilty petitioner received advice from counsel that was within the range of competence demanded of attorneys in criminal cases. McMann v. Richardson, supra at p. 771, 90 S.Ct. 1441.

Ineffective Assistance of Counsel.
In order to assert a Sixth Amendment claim of ineffective counsel, the circumstances must demonstrate that which amounts to a lawyer's deliberate abdication of his ethical duty to his client. There must be "such conscious conduct as to render pretextual an attorney's legal obligation to fairly represent the defendant." Robinson v. United States, 448 F.2d 1255, 1256 (8th Cir. 1971). The facts of this case fall short of raising such a claim. The record discloses and the state court reliably found on the basis of the Rule 27.26 hearing that petitioner was competently represented by two attorneys, both of whom took an active part in the case. These attorneys sought suppression of the incriminating statements alleged to have been recorded by the Circuit Attorney's office. Morris explained to petitioner his legitimate fears of the possible consequences of going to trial after the motion to suppress was denied. Viewed in the context of the unavoidable uncertainty facing any criminal defendant prior to trial, the severity of the punishment petitioner faced if convicted of first degree murder and the trial court's denial of the motion to suppress, the advice to plead guilty cannot be considered incompetent even if it is assumed that an appellate court would ultimately hold the incriminating statements were obtained in violation of Miranda. That a guilty plea must be intelligently made is not a requirement that all advice offered by defense counsel withstand retrospective examination in a post-conviction proceeding. A plea of guilty upon reasonably competent advice is not open to attack on the ground that counsel may have misjudged the admissibility of a defendant's confession. McMann v. Richardson, supra, 397 U.S. at p. 770, 90 S.Ct. 1441.
In the Rule 27.26 proceedings, petitioner claimed that his appointed trial lawyers failed to interview several persons who could have testified on his behalf at trial. However, petitioner testified at the hearing that none of these witnesses could have testified as to his guilt or innocence. Petitioner was not denied effective assistance of counsel.

Conclusion.
Based upon the foregoing, the court finds that petitioner understandingly and voluntarily entered his plea of guilty to the charge of second degree murder on the advice of competent counsel.
Accordingly, it is hereby ordered that the petition for writ of habeas corpus is denied.